Good morning. Welcome to the Ninth Circuit. Judge Hawkins and I are also happy to welcome Judge Harpole from the Western District of Missouri sitting by designation. The first case for argument this morning is Walker v. Ellensburg School District. You may proceed. Good morning. I'd like to reserve two minutes for rebuttal. All right. May it please the Court, the trial court's decision should be reversed for three reasons. The first reason is that the trial court erred in concluding that Mr. Walker was not discharged because it relied on a legally and factually distinguishable decision emanating from the territory of Saipan. Point number two, the trial court erred in concluding that there was not sufficient evidence for his wrongful discharge claim to go to a jury by ignoring strong and substantial circumstantial evidence of deviation from policies, proximity in time, and inconsistencies that are on the record. Your client did not have a contract for a period of time, correct? He had a year-to-year contract, Your Honor. Exactly. And the employment decision that was made was his employment contract was not renewed. That is the decision that was made. However, the issue is... That's what happened. He was informed that his contract was not renewed. Is that right? That is correct, Your Honor. Okay. What's your best evidence that that decision by the school district is tied to his actions and activities and statements about the budget? So the district was very concerned about the budget. We know this because... I'm looking for a list. January 13th, 2017, email from Curtis Bull to the board saying that the special ed budget needs to be cost-contained. January 14th, 2017, the board discusses the special education budget. January 16th, 2017, Curtis Bill, one of the board members, goes to the then-Superintendent Paul Ferris saying, I want Farley, my client, to knock this effing ass stuff off. Then the board, even though it's not supposed to, starts to tell the then-Superintendent Mr. Ferris to evaluate Mr. Walker's performance, even though the board testifies that that is not his job. So that's a deviation from the policies. Then there's another policy that was deviated from, that's policy 5280P, which says for classified employees like Mr. Walker, they need to be given pre-termination notice and an opportunity to be heard. The person that the policy says who needs to communicate the notice is the administrator. So in this case, that would be Michael Nolan, the superintendent that the board brought in. So the special education is incredibly important, and then there's the proximity and time issue. Michael Nolan comes in as a superintendent on February 5th, 2017. There's a meeting. At that meeting, Mr. Nolan says, Mr. Walker is still here. Five days later, April 10th, 2017, Mr. Walker again raises the issue of special ed budget noncompliance. And this, again, is important to the district because the state auditor's office is coming in to audit the budget. So there is fear that Mr. Walker's continued whistleblowing, reporting of government mismanagement could put those funds in the special education program and budget. Tell me, I'm struggling with how is that whistleblowing? He is a CFO for the school district. His job is to report on the financial conditions. He reports on financial conditions to the people who he's supposed to report to. So I don't understand how that's whistleblowing. My best response to that, Your Honor, say it's like saying that an employer cannot discharge a human resource official who's charged with enforcing anti-discrimination laws for blowing the whistle on discrimination. Did he report a violation of law to anybody? He continued to raise that with the board. And the board, as evidenced by- That. What is that? I think that's what we're trying to figure out. That would be- He continued to raise that. Okay. That is two parts, Your Honor. First off, the district did not, its IEPs, Individual Education Plans, were not in compliance with the regulations. That in turn affected the district's special education budget. Going back to this email from Mr. Bull on January 13th, and it is ER 245, the district recognizes by itself that the special education budget needs to be cost-contained by the law. So the district is recognizing that, Mr. Walker's communicating that. If this was a first amendment case- So that's how that whistleblowing- Yeah. I mean, he's doing it. Isn't that what they said in the end? That's what he's supposed to do. He's supposed to oversee this. He's to see whether the budget is matching up with the programs like the IEPs. The whistleblowing escapes me here. So help me out on that. If you look at the- So go into the elements of our whistleblower claim. The first is a clear public policy. And in support of whistleblowing, the state has announced the Local Whistleblower Protection Act, which Mr. Walker did not bring a claim under because he was fired, and that claim does not recover firing. But the subset of that claim makes clear that government mismanagement, which this is, the board not cost-containing a special education budget, is something that when you report on it, regardless of your position, again, much like the human resources person who's charged with discrimination reporting discrimination, there's no case that I'm aware of. And the defense cites that in saying that outside of the First Amendment context, which is where we are with this claim, somebody whose job it is to report improprieties can be legally fired for reporting their improprieties.  And again, if this was First Amendment, then, you know, the defense would have a point under the Garcetti decision. Going back to your point, Your Honor, to continue off of the proximity and time, three days after Mr. Walker again raises the issue of the special ed budget not being cost-contained, he is terminated. He's not renewed. I understand it's your argument that, in fact, it was a termination. But in point of fact, his contract was not renewed. Right. But there is case law from, so the Black v. Brewer case that the district court relied on, that is a 2008 decision, again, from the territory of Saipan that addressed really the First Amendment context, and that's 2008. But in 2018, an Eastern District of California court, Ortez v. Alvarez, 341 F. Sup. 3rd, 1087. Is this in your brief? I'm sorry, Your Honor? Is this in your brief? It is not, Your Honor. Did you file a supplemental letter? I have not. My plan was to raise it on oral argument. We had the same situation yesterday, so I'll give you some free advice, and that is that the better practice is to put it in a 28-J letter, because then we can read it, and your opposing counsel can read it, and then we're not . . . And we're all prepared. We're all on the same page at the argument, so just for future reference. I apologize, and if I may, I'd be more than happy to submit something after the fact. And you're welcome to do that. Thank you, Your Honor. Do you agree that the interim superintendent had the authority to decide not to renew your client's contract without a board vote? I agree with that, Your Honor. Yes. All right. And in this case, his stated purpose for non-renewing was your client's inability to get along with other people on the staff? That is his stated reason, but that, when you stack it up with the inconsistencies, deviation from policy, and the proximity time is . . . What deviation from policy are you talking about? 5-2-8-0-P. That is the policy that said if you're a classified administrator, which Mr. Walker was, and you're going to get renewed, then you have an opportunity to get notice of why you're being terminated. And terminated in that policy is not defined, but a non-renewal is a termination just using the Black Claw Dictionary definition. But that policy was not filed. There's another practice, which says that the . . . He got to finish his term, and he got paid his whole benefits under the first year. So doesn't that just apply if you're not going to let the . . . pay the person his salary or compensation due under the contract? No, it doesn't, Your Honor, because the property interest that Mr. Walker had was a protection from without-cause discharge, and then the practice . . . Wait. You know, we keep talking about discharge. Are you suggesting he's entitled to all the provisions, for example, under a ladder mill hearing? Yes. Okay. As long as he is . . . Even though he's an at-will, on-a-contract, one-year-by-one-year employee. That is correct, Your Honor, and the authority for that is 28A 400-301A. That is in the brief, and I will point out that the district court cited RCW 28A 400-400 for the proposition that no property interest exists, but that statute, 28A 400-400, no longer exists. So the district court was in error for that reason. Do you want to save your remaining time? I do. Thank you. May it please the Court, good morning, Your Honors. Mick McFarlane on behalf of the defendants. The entire factual premise, as I believe you have noted with your questions to opposing counsel, that Mr. Walker bases his claims on is that he reported, quote-unquote, governmental misconduct. And from that foundational premise, he asked . . . he first asked the district court and now asked this court to make the speculative conclusion that he was, quote, discharged because of reporting the alleged governmental misconduct. There are three primary flaws with that argument. First, the foundational premise of Mr. Walker's claims is, in fact, flawed, and it is flawed because, as I believe your questions to Mr. Crotty pointed out, he did not report governmental misconduct. What he did, as the business manager for the school district, is do his job, and his job was to bring to the school board budgetary issues, and if the special education department is not cost-contained, that's a budgetary issue, which, as counsel admitted, was of concern to the board. The board has to know what the financial situation of the district is, and that includes the special education department. The second reason . . . I think, if I understand his argument, is all of that is true, but because he brought forth something, even if he was obligated to do it as part of his job, he was retaliated for basically opening the box on that issue. Sure. First of all, I wouldn't characterize it as opening the box because it is something that everyone was aware of. As a matter of fact, I believe there was reference to an email from board member Curtis Bull pointing out that our special education budget is not cost-contained and it needs to get cost-contained. But more directly to your point, Your Honor, yes, that's his point. The problem is there's no evidence that the decision to non-renew was based upon any discriminatory animus. The timing is a little suspicious, isn't it? No, because the reports that he'd been making, if we're going to try to talk about the proximity between the reports and the decision not to renew, the reports have been going on for some period of time. It is not something that Mr. Nolan became the interim superintendent, then there was some report that was made, and then the decision to not renew was made. Instead, the reports have been being made for a long period of time, the record establishes that, because the special education budget had not been cost-contained for some period of time. The timing, I think, Your Honor, is more related to simply when Mr. Nolan was appointed as the interim superintendent. And this is a situation where, as the superintendent, he has the right to formulate his cabinet that he'll be working with, with persons that he believes he can work with. And he was very clear in his testimony, Mr. Nolan's testimony, that the sole basis for his decision was his perception that Mr. Walker did not, for lack of a better term, play in the sandbox well with others. He was very good, Mr. Walker was very good at what he did financially and working with numbers and working with the budget. What about the stray comments that your opposing counsel mentioned? The stray... The expletive-laden description of the plaintiff's conduct. Oh, sure. I think there was definite frustration by the board. They've testified to that, not regarding the fact that Mr. Walker was bringing up the fact that the special education budget was out of compliance or was not cost-contained, but it was the manner in which he was presenting it. And what the record establishes is that the board wanted it simplified. He would come into the board meetings and make very long presentations that, quite frankly, did not make a lot of sense to the board. The board couldn't follow what was being said. And in addition to that, Mr. Walker would continue to put the special education budget in red ink, which the board, for whatever reason, did not want. And the board asked him not to continue putting the budget when you turn in the written budget in red ink, and Mr. Walker continued to do that, and it did frustrate the board. But I think it's a proper place to point out, Your Honor, that for purposes of summary judgment, I told the district court, and I'll tell you this, you can assume that the board was frustrated with Mr. Walker, and if you believe that there was material facts suggesting that the board had discriminatory animus, that doesn't save the case from dismissal, because it is undisputed in this case that the decision not to renew Mr. Walker's contract was made by Mike Nolan and solely by Mike Nolan. So in order to get from there being a question of fact about the board having discriminatory animus and that resulting in a denial of the summary judgment, there had to be evidence suggesting that the board somehow influenced Mr. Nolan. And I do think it's important or proper to look at kind of the shifting sands that we've faced in this case as it relates to that issue, because the original summary judgment was very simple and very straightforward, and it was premised upon the argument, Mr. Nolan made the decision, you have no evidence that Mr. Nolan had discriminatory animus against Mr. Walker. The response we got back was based solely upon a cat's paw theory. There was an argument that the board had animus, but there was never the argument placed before the district court that Mr. Nolan had discriminatory animus. And I think the real reason for that is simple, and that is there wasn't evidence. They did not have an argument to suggest Mr. Nolan had this discriminatory animus. Would you clarify, he references RCW 28A 400.300. Yes. What is it in that statute, your understanding that the district had an obligation to do that it did not do allegedly? With all due respect, Mr. Crotty, he is simply incorrect. Washington law could not be more clear in interpreting that statute that school district employees' employment is limited to a one-year period. That's how I read it. I mean, that gives them the chance, basically, without layoff status, to hire everybody back or not hire everybody back, correct? That is correct. That's what the intention of the statute is. Correct. And then the courts have interpreted that classified staff can only be discharged during the term of that employment for cause, but there need not be cause at the end of the one-year period. And so one of the arguments you heard was that policy 5280 was not followed. That policy, by its own title, relates to the termination of employees and gives the employees who are terminated, as opposed to non-renewed, the procedural rights of notice and opportunity to be heard. But if you apply that policy, as council has suggested, to non-renewals, then that would be contrary to all Washington law, which says that non-renewals don't have to be based upon any cause, and by operation of law, the employment simply expires. I assume you disagree that he somehow is entitled to all these Loudermill protections and hearings. Yes, I do disagree with that, and I think that if that was imposed, it would overturn the statute. The statute itself and the Washington law interpreting the statute. I have 13 seconds, so I just want to wrap up, Your Honors, by saying that summary judgment was appropriate. I'd ask the court to affirm the summary judgment. One issue that was not decided below, but if there's any question in this court's mind about the conduct of Mr. Nolan or any of the board members, they are entitled to qualified immunity, and specifically based, I would suggest, on the fact that the actions were taken with advice of council. Thank you. Thank you, Your Honor. As it relates to the breach of promise claim, whether Mr. Walker was doing something within or without his, within the scope of his job, it doesn't apply. Again, the policy is clear. It discusses termination. A non-renewal is a species of a termination. As it relates to Mr. Nolan's supposed legitimate non-discriminatory reason to get rid of him, Mr. Nolan said that Mr. Walker was not a good fit. But if you look at the termination letter, the termination letter discusses reorganization in the business office, which is different from being not a good fit for the culture. And a subjective reason like that in and of itself is also, and I'll quote from the Nante versus Verro's case that's been overruled on other grounds, but not for this proposition, but such subjective job criteria provides a convenient pretext for discriminatory practices and may be easily asserted as the reason for an adverse employment decision when in fact the reason was discriminatory or retaliatory. Also, as it relates to the non-renewing Mr. Walker and then paying him for his remaining three months on his contract, we understand that argument, but at the same time, during the course of his term, Mr. Walker had the right to go before the board, be notified of the reasons why they were getting rid of him, and to state his case. And that did not happen in this instance. So in essence, what the district is saying that they can basically tell somebody to not show up for work for a couple months, pay them off, and avoid their obligations under the due process clause of the Constitution, which applies here. So unless there are any other questions, I thank you for your time. Thank you. The case just argued of Walker v Ellensburg is submitted. Thank you both for coming over from Spokane this morning.
judges: Hawkins, McKeown, Harpool